**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

WILLIAM MCGHEE,

      Plaintiff,

v.                                     CV 11-0640 JCH/WPL

ANDREW SWEENEY, et al.,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

      This action concerns two claims brought by a prisoner against several prison employees. William McGhee alleges that Andrew Sweeney and Mike Sanchez (collectively "Corrections Defendants"), corrections officers at Central New Mexico Correctional Facility ("CNMCF"), interfered with his mail and gossiped about its contents. He also asserts that Dr. Nathan Hurwitz and Dr. Carol Saur (collectively "Medical Defendants"), medical staff members at CNMCF, subjected him to antipsychotic medication against his will. Both sets of Defendants seek summary judgment in their favor on these claims. Conversely, McGhee seeks to compel discovery on his remaining claims as well as on a litany of other alleged abuses. Having considered the parties' submissions and the relevant law, I conclude that judgment in Defendants' favor is appropriate. Therefore, I recommend that the Court grant summary judgment in Defendants' favor, dismiss McGhee's claims against Corrections Defendants without prejudice, dismiss his claims against Medical Defendants with prejudice, and deny his discovery motion as moot.

**FACTUAL AND PROCEDURAL BACKGROUND**

At all relevant times, McGhee was incarcerated at CNMCF. Likewise, at all relevant times Medical Defendants were employed by Corizon, Inc., to provide medical services at CNMCF, while Corrections Defendants were employed by the New Mexico Corrections Department ("NMCD").[1] Unless otherwise indicated, the facts described herein are not in dispute.

### I.      Corrections Defendants

Corrections Defendants were members of the CNMCF Security Threat Investigations Unit ("STIU"). The STIU exists to investigate "Security Threat Groups," which consist of groups of inmates who engage in patterns of criminal or otherwise wrongful activity. McGhee believes that Corrections Defendants secretly investigated him pursuant to their authority as STIU members, though Corrections Defendants have submitted an affidavit from the current STIU administrator stating that McGhee was never classified as an Security Threat Group member and was never an STIU target.

McGhee claims that Corrections Defendants have used their authority as STIU members to wrongfully "photo copy, hold, read, delay and hinder" his mail. More specifically, McGhee alleges that Corrections Defendants opened his incoming and outgoing mail, photocopied it, and passed the photocopies around among staff members to ridicule their contents. McGhee also alleges that his incoming and outgoing mail is sometimes destroyed, presumably by Corrections Defendants. McGhee does not refer to any specific letters from any specific dates with which

---

[1] In his complaint, McGhee identified Medical Defendants' employer as Correctional Medical Services, a predecessor to Corizon, Inc. Medical Defendants originally stated that they were without sufficient information to admit this allegation. (*See* Doc. 15 at 5; Doc. 16 at 5.) However, Medical Defendants now appear to concede that they were employed by Corizon at all relevant times. (*See* Doc. 77 at 14.) Similarly, Corrections Defendants now appear to admit that they were employed at all relevant times by NMCD. (*Compare* Doc. 70 at 3, *with* Doc. 78 at 2-3.)

Corrections Defendants interfered. For their part, Corrections Defendants concede in their *Martinez* report (though not in sworn affidavits) that they may have opened some of McGhee's mail, but never as part of an STIU investigation and always in accordance with NMCD policy.

## II.   Medical Defendants

McGhee was sent to the Mental Health Treatment Center ("MHTC") at CNMCF in February 2009, though Dr. Saur later concluded that McGhee "faked a sub-clinical level of symptoms" at the time. In April 2009, Dr. Saur again referred McGhee for transfer to MHTC, noting chronic paranoid delusions, "explosive outbursts," and a refusal to communicate with clinical staff. McGhee was specifically angered by the discontinuation of certain medication, convinced that the facility staff was poisoning him, and afraid that Dr. Saur had "bugged" her office with microphones and tape recorders. McGhee was diagnosed with antisocial personality disorder and psychosis, and staff noted his rapidly decreasing GAF score.[2] Dr. Saur suggested at the time that staff might need to consider filing a petition for a treatment guardian in state court.

Two months later, Dr. Saur again referred McGhee for MHTC transfer after he threatened corrections staff for allegedly poisoning him. Dr. Saur noted McGhee's increasing paranoia and his categorical refusal to take antipsychotic medications, and she opined that he was no longer able to benefit from the level of care available in the Alternative Placement Area, a specialized unit for inmates with chronic mental illness. Another psychiatric encounter in July 2009 recorded McGhee's recurring fears of being poisoned and an angry incident of window-banging.

NMCD filed a petition for appointment of a mental health treatment guardian in state court in September 2009. After conducting a hearing, the court found that McGhee was

---

[2] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005).

incapable of making his own treatment decisions or understanding and expressing opinions regarding treatment decisions. Accordingly, the court appointed a treatment guardian for a one-year period and granted the guardian all powers enumerated in the state's Mental Health and Developmental Disabilities Code. Within several days, the treatment guardian had approved the administration of Haldol D, an antipsychotic medication. McGhee states in his complaint that the treatment guardian was unnecessary and the medication unwarranted.

Psychiatric staff developed a treatment plan calling for monthly Haldol D injections for the following six months. McGhee complains that he was administered the medication without having any chance to speak to his treatment guardian. Throughout much of this period, McGhee continued to resist psychiatric examination or treatment and to insist that the order for a treatment guardian was unconstitutional. Psychiatric records from that time indicate that McGhee's poisoning concerns abated but did not entirely disappear, and he consistently remained very angry, depressed, and lethargic. In January 2010, while still disputing the need for the medication, McGhee agreed to take Haldol orally rather than by injection. This regimen continued until September 2010, when the order for a treatment guardian lapsed and McGhee refused further Haldol treatment.

By the summer of 2011, McGhee was again asserting that CNMCF staff had poisoned him, and he began telling psychiatric staff that he was seeing and speaking with God and dead relatives and that he was "astral projecting" to have sex with corrections staff and others. He also claimed that he had cast demons out of several corrections officers and inmates and that God had told him that the person he had been convicted of murdering in 1982 was "an evil person." In July 2011, McGhee told a clinician that he was not taking medication because Dr. Saur had

discontinued his psychotropic medication; however, he also stated that Dr. Saur had predicted he might hurt someone if not on psychotropic medication.

Psychiatric staff again became concerned that McGhee's delusions presented a danger to corrections staff and inmates. On August 1, 2011, NMCD again filed a petition in state court for appointment of a mental health treatment guardian for McGhee. Once again a hearing was held, and once again the court concluded that McGhee was incapable of making, understanding, or expressing opinions regarding treatment decisions. The court appointed a treatment guardian for one year on August 4, 2011. Medical Defendants once again administered Haldol to McGhee, and the parties agree that this was done on the instructions of the treatment guardian.

McGhee continually complained of the side effects of Haldol thereafter. A Case Synopsis discussing this time period describes how the Haldol D injections induced depression in McGhee and were briefly discontinued. The injections were restarted in October 2011[3] after McGhee began refusing alternative medication.

Meanwhile, McGhee's attorney appealed the most recent order appointing a treatment guardian. In September 2011, the state court denied a motion to stay the order pending appeal. Still, the state appeals court proposed to reverse the treatment guardian appointment for lack of sufficient evidence, and NMCD did not voice any opposition. The appeals court thus reversed the appointment on January 19, 2012, and McGhee's Haldol treatment was discontinued.

### III.    Procedural Posture

McGhee filed his first verified "Civil Complaint" on July 21, 2011, alleging, *inter alia*, that Corrections Defendants inappropriately intercepted, opened, destroyed, and/or discussed the contents of some of his mail with CNMCF staff. (*See* Doc. 1 at 2-3, 7, 12-14, 16.) McGhee filed a second verified "Civil Complaint" on September 1, 2011, alleging, *inter alia*, that Medical

---

[3] The Case Synopsis lists a date of October 17, 2012, but context suggests that this is a typo.

Defendants violated his due process rights and acted with deliberate indifference to his constitutional rights. (*See* Doc. 6 at 2, 7, 10-11, 13, 19-20.) The Court construed these documents as one complaint and, pursuant to 28 U.S.C. § 1915(e)(2) and Federal Rule of Civil Procedure 12(b)(6), dismissed all other Defendants from this action and all claims except those of interference of mail against Corrections Defendants and involuntary medication against Medical Defendants. (Doc. 8.)

Medical Defendants filed their answers shortly thereafter. (Docs. 15, 16.) Corrections Defendants filed a motion to dismiss, but the Court denied this motion on the recommendation of the referral Magistrate Judge[4] in December 2012. (Docs. 44, 56.) Several months later, the Court denied McGhee's interlocutory requests that it revise its earlier dismissal order. (Doc. 60.) Corrections Defendants filed their answer in November 2013 (Doc. 70) on the referral Magistrate Judge's order (Doc. 67).

The referral Magistrate Judge ordered the remaining Defendants to file *Martinez* reports no later than February 14, 2014, and ordered McGhee to respond to the reports within forty-five days of their filing. (Doc. 73.) Although both remaining sets of Defendants timely filed their *Martinez* reports (Docs. 77, 78), McGhee did not timely respond. On May 9, 2014, I ordered McGhee to file his response brief, if any, no later than May 23, 2014. (Doc. 92.) On June 2, the Court received from McGhee a document dated May 27, 2014. (Doc. 94.) McGhee's filing fashioned itself as both a response to the *Martinez* reports and a "motion to compel." Both sets of Defendants filed response briefs addressing this document (Docs. 95, 97); McGhee did not file a reply.

---

[4] The Honorable W. Daniel Schneider served as referral Magistrate Judge on this case through his retirement in March 2013, at which time the Honorable Alan C. Torgerson took his place. I was assigned as referral Magistrate Judge on January 17, 2014, upon Judge Torgerson's retirement.

**DISCUSSION**

**I.      Motion to Compel**

Before resolving McGhee's "motion to compel" (Doc. 94), I must consider the matter of how to construe the filing. First, to the extent that the document purports to address Dr. Hurwitz's motion for a protective order (*see id.* at 2, 12-15), the motion should be denied as moot since I already ruled on that motion (Doc. 91). If the Court chooses to construe the document as an objection to my previous ruling pursuant to Rule 72(a), I recommend that the Court deny the objection for the reasons previously given in that ruling.

McGhee's filing also reiterates his request that the Court appoint him counsel in this action. (*See* Doc. 94 at 2-3.) This request is considered in an order addressing McGhee's pending motion to appoint counsel (Doc. 83), filed contemporaneously with these proposed findings and recommendations.

Notably, McGhee requests in his motion that the Court compel "[t]he defendants and/or the NMCD" to produce a full copy of his grievance file and to stay proceedings until they have done so. (Doc. 94 at 15.) Despite his citation to Rule 37, McGhee's request, sworn under penalty of perjury (*see id.*), is more in line with a motion to defer consideration of a summary judgment motion pursuant to Rule 56(d). As that Rule provides, a party may request such relief by showing via affidavit or declaration that he cannot present facts "essential to justify [his] opposition" to a summary judgment motion. FED. R. CIV. P. 56(d)(1).

Yet McGhee's motion, if brought under Rule 56(d), would have to be denied, as McGhee has not shown that the material he requests is necessary to respond to the pending *Martinez* reports. The context of McGhee's motion makes it apparent that he is seeking grievances relating to his medical care, as he refers repeatedly to Medical Defendants' attorney and cites to

documents relating to his disputes with Medical Defendants. Yet, these Defendants do not raise an exhaustion argument in their *Martinez* report, so the grievances relating to his medical treatment are not essential to opposing that report's request for summary judgment. Further, even though Corrections Defendants raise an exhaustion argument in their *Martinez* report, they assert that they have provided "all grievances, complaints, responses, and appeals" that "relat[e] to Plaintiff's mail/privacy claims." McGhee does not claim in his motion that the exhibits relating to that defense are incomplete, and he does not purport to show how further disclosures would be "essential" to his opposition. McGhee has thus failed to meet his burden of showing that the Court should defer consideration of the pending *Martinez* reports pursuant to Rule 56(d).

Nor does McGhee's motion constitute a response brief addressing the facts or legal arguments discussed in Defendants' *Martinez* reports. The motion raises no points with respect to McGhee's claim that Corrections Defendants interfered with his mail. Similarly, except perhaps in the broadest of terms (such as a passing reference to "unlawful injections"), McGhee's motion does not discuss his claim against Medical Defendants except to argue that he is entitled to discovery regarding his grievances; he does not otherwise refer to the arguments raised in Medical Defendants' *Martinez* report. I therefore do not construe McGhee's motion as responsive to the pending *Martinez* reports.[5]

That leaves a literal construction—interpreting McGhee's motion as a general discovery motion under Rule 37(a). A party may seek discovery as to "any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). And McGhee indirectly raises a valid point (*see* Doc. 94 at 13)—although not addressed in their *Martinez* report, Medical Defendants did assert an exhaustion defense in their answers (*see* Doc. 15 at 18; Doc. 16 at 17), as did Corrections Defendants (*see* Doc. 70 at 7). Moreover, the protective order I issued at Dr.

---

[5] I therefore do not reach Corrections Defendants' timeliness argument (*see* Doc. 97 at 2).

Hurwitz's request only protects Medical Defendants from producing grievance records "not in their possession, custody, or control." (Doc. 91.) McGhee's request for additional discovery might have some merit—if this action were to survive summary judgment.

Ultimately, that issue does not need to be decided today. Because I recommend that the Court grant summary judgment in Defendants' favor on the basis of their *Martinez* submissions, I recommend denying McGhee's motion to compel as moot. However, if the Court rejects my recommendations and McGhee's claims survive summary judgment, I recommend that the Court defer consideration of McGhee's motion so that I may address it at a later date.

## II.      Corrections Defendants' *Martinez* Report

The alleged constitutional violation committed by Corrections Defendants involves McGhee's right to communicate with persons outside of prison, which is protected under the First Amendment right to freedom of speech. *See Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010) (citing *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996)). McGhee brings this claim against Corrections Defendants in their individual capacities (*see* Doc. 1 at 10) pursuant to 42 U.S.C. § 1983, which provides a remedy when a person acting "under color of state law" deprives a citizen of any "rights, privileges, or immunities secured by the Constitution and laws." *See Zinermon v. Burch*, 494 U.S. 113, 114 n.1, 124-25 (1990) (citing *Monroe v. Pape*, 365 U.S. 172 (1961)).

In their *Martinez* report (Doc. 78), Corrections Defendants counter McGhee's claim against them with three defenses, which I reorganize in logical fashion. First, they argue that McGhee failed to exhaust administrative remedies regarding his allegations against them. Second, Corrections Defendants contend that they are entitled to qualified immunity with respect to McGhee's claim. Third, and most broadly, Corrections Defendants assert that McGhee has

failed to state a plausible claim for relief. Because I conclude that McGhee failed to exhaust administrative remedies, I do not reach their remaining arguments.

    A.  <u>Legal Standards</u>

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). In ruling on a summary judgment motion, the Court may neither make credibility determinations nor weigh the evidence. *Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2001) (quotation marks omitted).

For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citation omitted). A *Martinez* report is also treated as an affidavit, and this report can be used in determining whether to grant summary judgment if it is "supported by affidavits or other materials provided under oath." *Id.* at 1110, 1111 (citations omitted). A court cannot resolve material disputed factual issues by accepting a *Martinez* report's findings when the plaintiff has presented conflicting evidence. *Id.* at 1111. However, conclusory allegations without specific supporting facts have no probative value and cannot create a genuine issue of fact. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). As is true with all affidavits, statements of mere

belief must be disregarded. *Argo v. Blue Cross & Blue Shield*, 452 F.3d 1193, 1200 (10th Cir. 2006).

As with all pleadings filed by pro se individuals, the Court must liberally construe the allegations contained in McGhee's complaint. *Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, the Court must apply the same legal standards applicable to pleadings drafted by counsel. *Id.*

Finally, I note again that McGhee did not file a brief responding to either *Martinez* report, despite the extension granted to him. Even McGhee's motion to compel fails to address any of the factual assertions or legal arguments raised by Corrections Defendants in their report. Still, "a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). Although McGhee has now "waive[d] the right to respond or to controvert the facts asserted" in the *Martinez* report, Corrections Defendants still bear the burden of demonstrating that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law before their motion may be granted. *See id.* "If the evidence produced in support of the summary judgment motion does not meet this burden, 'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'" *Id.* at 1194 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)).

B.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") prohibits any action regarding prison conditions from being brought by any inmate until he has exhausted all administrative remedies that are available. 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) (recognizing that exhaustion is required for any suit challenging prison conditions, regardless of

the cause of action). Because Congress has specifically mandated exhaustion of administrative remedies, the Court cannot waive this requirement, even if the remedy sought is not actually available to the prisoner through the administrative process. *Booth v. Churner,* 532 U.S. 731, 739 (2001) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). A prisoner must properly complete the full administrative review process set by the facility's grievance policy in order to exhaust administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010); *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (noting that it is not enough for a prisoner to begin the grievance process without completing it). A prisoner's failure to exhaust administrative remedies is an affirmative defense, *see Jones*, 549 U.S. at 216, that the defendant bears the burden of establishing, *see Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007) (citations omitted).

The administrative grievance procedure at CNMCF is governed by NMCD policies CD-150500 and CD-150501, both entitled "Inmate Grievances." (*See* Doc. 78 Ex. 3.a.) According to these policies, a prisoner must first file an informal grievance with his unit manager or the chief of security, who must then respond within five working days. If the prisoner is unsatisfied with the outcome of that process, he may submit a formal grievance with the CNMCF grievance officer. The grievance officer conducts an investigation, then forwards his report and recommendations to the warden, who then reaches a decision on the formal grievance within fifteen days of receiving it. The prisoner then has seven days to appeal the warden's decision by completing the appeal portion of the formal grievance form and submitting it to the grievance officer. The grievance office eventually forwards the appeal and any findings to the Secretary of the Department of Corrections, who then reaches a final decision on the grievance.

All parties acknowledge that McGhee submitted informal and formal grievances regarding Corrections Defendants' alleged actions to the appropriate persons and that both grievances were denied. (*See* Doc. 1 Ex. A; Doc. 77 Ex. 4.) However, Corrections Defendants have submitted an affidavit from the NMCD Grievance Appeals Coordinator, who testifies that McGhee did not fully appeal the grievance related to his claims of mail interference. (Doc. 77 Ex. 4.) Corrections Defendants also attach their copy of Grievance 08-11-008, which shows all actions taken on that grievance through the warden's denial of the formal grievance; on that copy, the section relating to appeals was not completed by McGhee or anyone else. (Doc. 77 Ex. 4.a.)

Although McGhee attaches to his complaint a copy of the same grievance form with his portion of the appeals section completed, that copy does not indicate that the grievance officer ever received the appeal or that any official rendered a decision. (*See* Doc. 1 Ex. A.) Accordingly, the undisputed evidence demonstrates that McGhee failed to fully exhaust his administrative remedies with respect to his claims that Corrections Defendants opened, gossiped about, destroyed, or otherwise interfered with his mail. Because the PLRA therefore requires dismissal of this action until such remedies are exhausted, *see* 42 U.S.C. § 1997e(a), I recommend that McGhee's claim against Corrections Defendants be dismissed without prejudice, *see Patel v. Fleming*, 415 F.3d 1105, 1109 (10th Cir. 2005).

### III.    Medical Defendants' *Martinez* Report

McGhee also claims that he was involuntarily medicated by Medical Defendants in violation of his Eighth and Fourteenth Amendment rights. (Doc. 6 at 2.) McGhee expressly brings his claim against Medical Defendants in their individual capacities under 42 U.S.C.

§ 1983. (*Id.* at 1, 6.)[6] In their *Martinez* report, Medical Defendants argue that McGhee cannot show deliberate indifference on their part and cannot re-litigate the propriety of the state court orders appointing treatment guardians.

A.  Legal Standards

The same summary judgment principles discussed with respect to McGhee's claims against Corrections Defendants apply to his claims against Medical Defendants. *See* FED. R. CIV. P. 56(a); *see also Celotex*, 477 U.S. at 322-24; *Anderson*, 477 U.S. at 248 (citations omitted); *Gossett*, 245 F.3d at 1175. As McGhee's complaint against Medical Defendants is sworn under penalty of perjury, it should be treated as an affidavit to the extent that it alleges facts based on his personal knowledge. *Hall*, 935 F.2d at 1111 (citation omitted). The Court must liberally construe the allegations contained in McGhee's complaint while applying the same legal standards applicable to pleadings drafted by counsel. *Northington*, 973 F.2d at 1520-21 (10th Cir. 1992) (citation omitted).

B.  Due Process

The involuntary administration of psychotropic drugs "imposes atypical and significant hardship on [an] inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Washington v. Harper*, 494 U.S. 210, 221-222 (1990)). "The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty," particularly when the drug in question is an antipsychotic. *See Harper*, 494 U.S. at 229. Accordingly, state prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Id.* at 221-22.

---

[6] Accordingly, I do not address Medical Defendants' argument regarding potential official-capacity claims (Doc. 77 at 14-15).

There are substantive and procedural contours to the Due Process Clause's protection against unwanted medication. *See id.* at 220-21. Substantively, the Clause prohibits the administration of involuntary medication to a prisoner "absent a finding of overriding justification and a determination of medical appropriateness." *Riggins v. Nevada*, 504 U.S. 127, 135 (1992) (citing *Harper*, 494 U.S. at 227). This includes, but is not limited to, circumstances where a prisoner "has a serious mental illness . . . if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Harper*, 494 U.S. at 227; *see also Jurasek v. Utah State Hosp.*, 158 F.3d 506, 512 (10th Cir. 1998) (recognizing the standard announced in *Riggins* as "more inclusive than the specifically listed criteria" discussed in *Harper*).

Procedurally, judicial review of a decision to administer involuntary medication is not necessary so long as adequate safeguards are in place. *Harper*, 494 U.S. at 233-35. It is enough that the relevant procedures "provide[] for notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses." *Id.* at 235; *see also Project Release v. Prevost*, 722 F.2d 960, 981 (2d Cir. 1983) ("[D]ue process requires an opportunity for hearing and review of a decision to administer antipsychotic medication—but such a hearing need not be judicial in nature.").

### 1. *Substantive Protections*

Although Medical Defendants do not squarely address McGhee's due process claim in the context of *Harper* and *Riggins*, they argue that McGhee is precluded from bringing this claim due to the state court's rulings. Specifically, they contend that the issue of McGhee's "competency and ability to make his own treatment decisions" was decided in those proceedings, and as such issue preclusion applies.[7]

---

[7] Although Medical Defendants refer to "res judicata" and "collateral estoppel" in their briefing, the Tenth Circuit instead prefers the terms "claim preclusion" and "issue preclusion," respectively. *See*

In New Mexico, a mental health professional "or any other interested person" who proposes the administration of psychotropic medication may petition the state courts for appointment of a treatment guardian if he or she believes that the patient is incapable of giving informed consent. N.M. STAT. ANN. § 43-1-15(A)-(B). The court may only order appointment of a treatment guardian upon a finding, on clear convincing evidence, that the patient is unable to make his own treatment decisions. *Id.* § 43-1-15(E). From there, the treatment guardian is responsible for deciding whether the patient should accept treatment, "depending on whether the treatment appears to be in the client's best interest and is the least drastic means for accomplishing the treatment objective." *Id.* § 43-1-15(F).

In the instant case, NMCD twice sought appointment of a treatment guardian for McGhee upon the request of medical staff at CNMCF, and the evidence establishes that the express purpose of both petitions was to ultimately administer antipsychotic medication to McGhee despite his refusal to accept such treatment. At both resulting hearings, the court found that McGhee was "in need of mental health treatment"; that he was "incapable of making his own treatment decisions"; and that he was "incapable of understanding and expressing an opinion regarding treatment decisions." (*Id.* at 8-9, 34-35.) The treatment guardians thereafter approved Haldol treatment for McGhee.

There is authority from outside this circuit supporting Medical Defendants' position that McGhee is precluded from re-litigating the basis for his involuntary treatment due to the state court's decisions. *See Gonzales v. Carpenter*, No. 9:08-cv-629 (LEK/ATB), 2011 WL 768990, at

---

*Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.1 (10th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 76 n.1 (1984)). Medical Defendants also do not specify which of these two principles should apply to McGhee's claim and simply recite the elements of both. Because the state court addressed the issues of McGhee's competency and his need for mental health treatment rather than the present claim under the Due Process Clause, it appears that Medical Defendants are bringing an issue-preclusion argument.

*17 (N.D.N.Y. Jan. 3, 2011) (Report and Recommendation) ("[P]laintiff is precluded from a factual challenge to the basis for his . . . involuntary medication, determined in a prior state court proceedings [*sic*], in which he had a full and fair opportunity to try to establish that he was not mentally ill or in need of treatment." (citing, *e.g.*, *Kulak v. City of New York*, 88 F.3d 63, 71-72 (2d Cir. 1996))), *adopted*, 2011 WL 767546 (N.D.N.Y. Feb. 25, 2011) (unpublished); *see also N. Natural Gas Co. v. Grounds*, 931 F.2d 678, 682 (10th Cir. 1991) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the state from which the judgment emerged would do so . . . ." (citing 28 U.S.C. § 1738)); *Ideal v. Burlington Res. Oil & Gas Co. LP*, 233 P.3d 362, 365-66 (N.M. 2010) (permitting issue preclusion in New Mexico where "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action . . . is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation").

I find the authority cited herein to be persuasive. The state court's findings that McGhee needed treatment and that he was incapable of handling treatment decisions constituted "overriding justification" for the rulings appointing treatment guardians to make these decisions on McGhee's behalf, despite his opposition to such treatment. This issue was actually and necessarily determined in the state court hearings, McGhee was a party to these proceedings, and the causes of action differed from McGhee's current due process claim. *See Ideal*, 233 P.3d at 365-66. Thus, McGhee is precluded from re-litigating *Riggins*'s "overriding justification" prong. *See* 504 U.S. at 135. Moreover, there is no dispute that the treatment guardians determined that the administration of antipsychotic mediation was medically appropriate, whether or not McGhee

agreed with this assessment. *See id.* Medical Defendants' decision to pursue this treatment despite McGhee's opposition therefore did not violate his substantive due process rights.

### 2. *Procedural Protections*

Medical Defendants also stress the procedural protections afforded to McGhee during the treatment guardian appointment process. Under state law, both McGhee and his attorney were served notice of the petition for appointment of a treatment guardian, and hearings were held within three days of the filing of each petition. *See* N.M. STAT. ANN. § 43-1-15(C). The same law required that McGhee be represented by counsel at the hearing and afforded him the right to be present at the hearing, to present witnesses, and to cross-examine opposing witnesses. *See id.* The relevant statute also provides a means for appealing the decision of a treatment guardian to the court, *see id.* § 43-1-15(I), and the court's appointment may itself be appealed, *see id.* § 43-1-24.

In *Jurasek*, the Tenth Circuit observed that an involuntary medication policy provided sufficient procedural due process protections by requiring independent medical personnel to consider whether the sought treatment was appropriate, permitting the patient to appeal their decision, allowing him to be present with representation at the resulting hearing, and authorizing him to present evidence and examine witnesses. *See* 158 F.3d at 513. As the Tenth Circuit noted, these procedures were substantially similar to those at issue in *Harper*. *See id.* (citing 494 U.S. at 228-36). If anything, the procedures called for by New Mexico law—which provides for all of these safeguards, in addition to judicial review—are at least as sufficient as those at issue in *Jurasek*. McGhee was afforded appropriate notice, an opportunity to competently respond to the petitions, an opportunity to appeal the state court decisions, and even an opportunity to appeal

any specific treatment decisions reached by the treatment guardians. Due process in these instances requires nothing more.

McGhee alleges certain violations of other procedures provided for by state law. For example, he claims that his treatment guardians never consulted with him before approving the administration of Haldol. *See* N.M. STAT. ANN. § 43-1-15(F) ("[T]he treatment guardian shall consult with the client and consider the client's expressed opinions . . . ."). Citing to an unattached exhibit, McGhee also claims that he had a right to have a family member serve as his treatment guardian and that the court did not try to contact his parents to serve in this capacity. *Cf. id.* § 43-1-15(D) (requiring the court to give priority to "an agent designated or nominated by the client," but only when the agent was designated or nominated "when the client had capacity"). Even assuming that these allegations are true and can rise to the level of procedural due process violations, McGhee has alleged no facts demonstrating that Medical Defendants were responsible for these purported omissions. Accordingly, these allegations cannot serve as the basis of a due process claim against Medical Defendants. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[P]ersonal participation is an essential allegation in a § 1983 claim." (quotation omitted)).

In short, Medical Defendants afforded McGhee sufficient substantive and procedural due process protections. His claim against them under the Due Process Clause must therefore fail.

C.  <u>Eighth Amendment</u>

McGhee also asserts that Medical Defendants' actions constituted "deliberate indifference to [his] rights" (Doc. 6 at 19-20), which I liberally construe as raising an Eighth Amendment claim. "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976) (quotation omitted). This "deliberate indifference standard has two components: an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind." *Mitchell*, 80 F.3d at 1444 (quotation omitted). The objective component focuses on whether the need for the deprived medical care was, "objectively, sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted), or whether there was otherwise an "extreme deprivation" denying "the minimal civilized measure of life's necessities," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quotation omitted). The subjective component concerns whether the defendant knew of and disregarded "an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, McGhee alleges no facts demonstrating that he was deprived of appropriate medical care despite possessing a sufficiently serious health need. Nor does McGhee allege facts showing that he was denied any of life's necessities due to an extreme deprivation caused by Medical Defendants. Finally, McGhee has alleged no facts showing that Medical Defendants knew of and disregarded any excessive risk to his health or safety during the course of his treatment. Instead, the undisputed facts show that Medical Defendants administered care to McGhee with the consent of his court-appointed treatment guardians after diagnosing him with serious mental health disorders. Although McGhee may be dissatisfied with the treatment Medical Defendants and his treatment guardians chose to address those disorders, his disagreement with the treatment prescribed by them does not itself state a claim of an Eighth Amendment violation. *See, e.g.*, *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir.

1999); *see also Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (per curiam) ("The prisoner's right [under the Eighth Amendment] is to medical care[,] not to the type or scope of medical care which he personally desires." (quotation omitted)).

No genuine disputes of material fact exist with respect to McGhee's involuntary medication claim, under either the Eighth or the Fourteenth Amendment, and Medical Defendants are entitled to judgment as a matter of law on that claim. I therefore recommend that the Court grant summary judgment in these Defendants' favor.

CONCLUSION

For the foregoing reasons, I recommend that the Court:

(1) grant summary judgment in favor of the remaining Defendants;

(2) dismiss McGhee's claims against Corrections Defendants without prejudice;

(3) dismiss McGhee's claims against Medical Defendants with prejudice; and

(4) deny McGhee's motion to compel (Doc. 94) as moot.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.